IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JEFFERY ALLEN McCLELLAN,<br>AIS #277145, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:17-cv-110-ECM-JTA |
| | ) | |
| SHARON McSWAIN HOLLAND and<br>SGT. MARY BOWEN, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint, Doc. 1 and

an amendment thereto, Doc. 16, filed by Jeffery Allen McClellan, an indigent state inmate,

challenging the constitutionality of actions which occurred in the latter part of 2015 during

his incarceration at the Elba Work Release Facility.  Specifically, McClellan complains the

defendants failed to ensure that he receive proper payment for the labor he provided to his

free-world employer while on work release.  McClellan alleges that in so doing the

defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by

not ensuring that his free-world employer properly paid him for the work he performed

over an eleven-week period for eight hours worked each Saturday at the required minimum

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

wage of $7.25 per hour.  Doc. 16 at 1–2.  McClellan also asserts that the defendants "neglected to follow ADOC policy" regarding the collection of his compensation.  Doc. 1 at 3.  McClellan seeks declaratory relief and monetary damages for the alleged violations of federal law and his constitutional rights.  Doc. 1 at 4.

The defendants filed a special report supported by relevant evidentiary materials, including affidavits, prison documents and checks from the free-world employer, and provided additional relevant documents upon motion by McClellan in which they address the claims presented to this court.[2]  In these filings, the defendants argue that no violation of the FLSA occurred because McClellan was not an employee covered by the Act and they deny acting in violation of McClellan's constitutional rights.  Docs. 25 & 33.  The court issued an order on July 25, 2017 directing McClellan to file a response, supported by affidavits or statements made under penalty of perjury and other evidentiary materials, to the arguments set forth by the defendants in their report.  Doc. 27 at 1–2.  The order specifically cautioned the parties that "**unless within fifteen (15) days from the date of this order a party files a response in opposition which presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to the order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion

---

[2] In his motion for production of documents, McClellan questioned whether a check in the amount of $199.12, Doc. 33-1, was ever deposited to his inmate account.  In response to this motion, the defendants submitted relevant records showing a deposit in this amount to McClellan's inmate account on January 28, 2016.  Docs. 33-1 & 33-2.

for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 27 at 2–3. Although McClellan filed an unsworn response to the defendants' production of documents, he filed no response to the arguments set forth in the defendants' special report as required by the order entered on July 27, 2017.[3]

Pursuant to the directives of the above described order, the court deems it appropriate to treat the defendants' special report as a motion for summary judgment. Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in response to McClellan's claims and the sworn complaint, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

---

[3] This court declines to consider McClellan's response to the production of documents because this response was not a sworn statement or signed with an averment that it was made under penalty of perjury. *See* 28 U.S.C. § 1746; *Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555, *2 (11th Cir. Jan. 20, 2007) (noting that "unsworn statements, even from *pro se* parties, should not be considered in determining the propriety of summary judgment"); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (holding that "the court may not consider [the pro se inmate plaintiff's unsworn statement] in determining the propriety of summary judgment").

fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion

and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub.*

*Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).   The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), Fed. R. Civ. P. 56(e).   "A mere 'scintilla' of evidence supporting the supporting party's position will not suffice[.]"   *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).   Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case.   *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .   Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.   At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the [defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes

6

summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . . Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Chamption Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue

affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that McClellan has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants. *See Matsushita*, 475 U.S. at 587.

### III.  ELEVENTH AMENDMENT SOVEREIGN IMMUNITY

Insofar as McClellan seeks monetary damages from each of the defendants in their official capacities, they are entitled to Eleventh Amendment sovereign immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

8

the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in her official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849. "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace*

9

*Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

## IV.  DISCUSSION

### A.  Relevant Facts

McClellan complains the defendants failed to ensure that he received all payments due from his free-world employer, Larry Adcock ("Adcock"), for work done while on work release.  Doc. 1 at 3.  ("While being at Elba Work Release I was contracted as a laborer and worked (11) Saturdays for Mr. Larry Adcock at $7.25 per hour.  I was never paid for the 88 hours [i.e., eight hours per day for work performed over these eleven weeks] which comes to $638.00.").  The defendants adamantly deny this allegation and maintain that McClellan received proper payment from Adcock for labor performed by McClellan for the total number of hours McClellan actually worked over the relevant period of time.  The evidentiary materials filed by the defendants indicate that McClellan worked less than eleven Saturdays during the time relevant to the claims raised in the complaint and further show that payments made by Adcock on checks from Larry's Paint and Body and Adcock's farm account, respectively, were deposited to McClellan's Prisoner Money on Deposit Account ("PMOD") as follows:  (i) $231.33 – December 11, 2015, (ii) $231.33 – December 18, 2015, and (iii) $199.12 – January 28, 2016.  Doc. 33-2.  After receiving the complaint, the defendants determined that Adcock owed McClellan an additional $98.13, obtained a

check in this amount from Adcock, Doc. 25-2 at 23, and deposited the check into McClellan's PMOD account in July of 2017.  Doc. 25-1 at 4.[4]

### B.  The FLSA Claim

McClellan alleges the defendants' actions or inactions in securing payments from his free-world employer violated the FLSA.  Doc. 16 at 1–2.  McClellan concedes that he seeks payment for contracted labor undertaken at the direction of a free-world employer occurring on several Saturdays during the last three months of 2015.  Doc. 1 at 2–3.

"Congress enacted the FLSA to eliminate, 'in industries engaged in commerce or in the production of goods for commerce, . . . labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers' because such conditions 'constitute[] an unfair method of competition in commerce[.]'  29 U.S.C. § 202(a)."  *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).  The FLSA "at its root, seeks to prevent employers from treating workers unfairly in their wages and hours.  FLSA is often called the 'minimum wage/maximum hours law' because it establishes a minimum wage for the 40-hour week, and requires that any hours [worked] over 40 in a week be paid overtime at time-and-a-half [the employee's] regular wage."  *Athan v. United States*, 2019 WL 423432, at *1 (E.D. Mich. Feb. 4, 2019).

The minimum wage provisions of the FLSA apply only to workers who are "employees" within the meaning of the Act.  29 U.S.C. § 206(a)(1).  Under

---

[4] McClellan does not dispute receipt of this payment but alleges this payment was not for farm labor but, instead, represented payment for work he performed as a mechanic in Adcock's paint and body shop, Doc. 47 at 2.  However, although this check is drawn on Adcock's paint and body shop account, the memo line of the check specifically states the payment is for "farm labor" performed by McClellan.  Doc. 25-2 at 23

the FLSA, an "employee" is defined as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, . . . ."  29 U.S.C. § 203(d). To "employ" is defined as to "suffer or permit to work."  29 U.S.C. § 203(g).

*Villarreal*, 113 F.3d at 205.

In *Villarreal*, the Eleventh Circuit adopted the reasoning of its sister circuits and held "that the underlying policies of the FLSA mandate that prisoners not be included as 'employees' under the FLSA."  113 F.3d at 206.  The court in *Villarreal* determined that when addressing FLSA claims brought by convicted inmates, a court should "focus[] on the economic reality of situation as a whole."  *Id*.  This standard of review constitutes a much broader approach to reviewing the FLSA claims brought by convicted inmates than the 4-factor economic reality test based solely on the relationship between the parties set forth in *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).

Applying *Villarreal's* broadened "economic reality of the situation in its entirety" standard of review to the instant complaint, the court finds that McClellan is not an "employee" under the FLSA and thus this Act provides him no basis for relief.  "The purpose of the FLSA is to protect the standard of living and well-being of the American worker."  *Villarreal*, 113 F3d at 207.  "Correctional facilities provide [those incarcerated] with their everyday needs such as food, shelter, and clothing. . . . Additionally . . . convicted prisoners . . . suffer from loss of freedom of choice and privacy due to the nature of their confinement."  *Id*. at 206.  Thus, "[b]ecause the correctional facility meets [McClellan's]

12

needs, his 'standard of living [and well-being]' is protected."  *Id*. at 207.  Accordingly, the FLSA does not apply to McClellan and the defendants are therefore entitled to summary judgment on this claim.

### C.  Denial of Funds ― Due Process

Insofar as the complaint can be construed to allege a constitutional violation regarding a lack of due process with respect to the purported failure of the defendants to obtain payments for McClellan owed to him by his free-world employer, this claim fails to implicate the due process protection afforded by the Constitution as neither a negligent deprivation of property nor "an unauthorized intentional deprivation of property by a state employee constitute[s] a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986) (Inmate's claim that deputy marshal failed to return ring to inmate, whether due to negligence or an intentional act, provided no basis for relief as neither a negligent loss of property nor an unauthorized intentional deprivation of property constitutes a violation of due process.); *Holloway v. Walker*, 790 F.2d 1170, 1173–74 (5th Cir. 1986) (finding no breach of federally guaranteed constitutional rights, even where high level state employee intentionally engages in tortious conduct, as long as the state system as a whole provides due process).

The State of Alabama, through its Board of Adjustment, provides a meaningful post-deprivation remedy for McClellan to seek redress of the defendants' alleged improper withholding of his earned income.  *See* Ala. Code § 41-9-60, *et seq.*; *Smith v. Governor of Alabama*, 562 F. App'x 806, 817–18 (11th Cir. 2014) (holding that the procedures of Ala. Code § 41-9-60, *et seq.*, provide a meaningful post-deprivation remedy through which a state inmate may seek relief for a loss or denial of property).  "Furthermore, the post-deprivation remedies available to the plaintiff under Alabama tort law [e.g., breach of contract against his employer are] sufficient to satisfy due process."  *Radford v. Mitchem*, et al., Civil Action No. 2:09-CV-02426-KOB-JEO (N.D. Ala. 2011),  Magistrate Judge's Report and Recommendation – Doc. No. 24 at 8, adopted as opinion of the court on October 24, 2011; *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) ("*Hudson* made clear that as long as ***some*** adequate postdeprivation remedy is available, no due process violation has occurred.") (emphasis in original).  Consequently, assuming *arguendo* that the defendants did not assure McClellan received payment for his work or failed to deposit payments received from his employer to his PMOD account, such actions do not implicate McClellan's constitutional right to due process as the post-deprivation remedies available to him under Alabama law are sufficient to satisfy due process.  *Hudson*, 468 U.S. at 534–35.  The defendants are therefore entitled to summary judgment on this claim.[5]

---

[5] This court has routinely and consistently applied the holding of *Hudson* to dismiss due process claims brought by inmates challenging actions of state officials regarding deprivations of their property. *McClellan v. Alabama*, Civil Action No. 2:11-CV-466-ID, 2011 WL 3423940 (M.D. Ala. 2011); *Flournoy v. Culver*, et al., Civil Action No. 1:10-CV-104-ID, 2010 WL 916577 (M. D. Ala. 2010); *Dunklin v. Riley*,

## D.  Violation of Administrative Regulations

To the extent McClellan asserts the defendants violated their own administrative regulations, he is entitled to no relief.  The law is well-settled that infringements of agency rules, regulations, policies or procedures do not, without more, amount to constitutional violations.  *Fischer v. Ellegood*, 238 F. App'x 428, 431 (11th Cir. 2007) (holding that Plaintiff's claim alleging defendants violated an internal jail policy was insufficient to survive summary judgment); *Sandin v. Conner*, 515 U.S. 472, 484–86 (1995) (noting that prison regulations are "primarily designed to guide correctional officers in the administration of a prison" and "such regulations are not designated to confer [constitutional] rights on inmates"); *Magluta v. Samples,* 375 F.3d 1269, 1279 n. 7 (11th Cir. 2004) (holding that mere fact governmental agency's regulations or procedures may have been violated does not, standing alone, raise a constitutional issue); *Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996) (holding that claim alleging prison officials failed to follow their own policies and procedures did not, without more, amount to a constitutional violation); *United States v. Caceres,* 440 U.S. 741, 751–52 (1979) (hiolding that mere violations of agency regulations do not raise constitutional questions); *Weatherholt v. Bradley,* 316 F. App'x 300, 303 (4th Cir. 2009) (same).  For these reasons,

---

et al., Civil Action No. 2:06-CV-1063-MEF, 2009 WL 3624706 (M.D. Ala. 2009); *Malone v. Boyd*, et al., Civil Action No. 2:09-CV-217-TMH, 2009 WL 1064903 (M.D. Ala. 2009); *Carter v. Valeska*, et al., Civil Action No. 1:08-CV-858-TMH, 2008 WL 5245618 (M.D. Ala. 2008); *Salmon v. Turner*, Civil Action No. 1:08-CV-554-TMH, 2008 WL 3286982 (M.D. Ala. 2008); and *Todd v. Jones*, et al., Civil Action No. 3:07-CV-1021-WKW, 2007 WL 4510340 (M.D. Ala. 2007).

the defendants are entitled to summary judgment on McClellan's claim regarding a violation of prison policies or regulations.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The parties bear their own costs.

On or before **February 25, 2020**, the parties may file objections to this Recommendation.  The parties must specifically identify the factual findings and legal conclusions contained in the Recommendation to which his objection is made.  Frivolous, conclusive, or general objections will not be considered by the court.

Failure to file written objections to the proposed factual findings and legal conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact [and law] and those findings are adopted by the district court the party may not challenge them on appeal

16

in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794

(11th Cir. 1989).

DONE this 10th day of February, 2020.


/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE